UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| ALBERTO NUNEZ,<br>Petitioner,<br>v.<br><br>ERIC RARDIN,<br>Respondent. | CASE NO: 2:25-cv-12596 |

### DECLARATION OF M. BURNETT

In accordance with 28 U.S.C. § 1746, I, M. Burnett, make the following declaration, under penalty of perjury.

1. I am presently employed with the United States Department of Justice, Federal Bureau of Prisons (BOP) as the Case Management Coordinator (CMC) at the Federal Correctional Institution in Milan, Michigan (FCI Milan). I began working for the BOP in October of 2001. As the CMC, I fall under the umbrella of unit management. My responsibilities include ensuring that BOP case management and unit management policies, including policies concerning the First Step Act, are properly implemented at FCI Milan.

2. The following statements are based upon my review of BOP's official files and records, my own personal knowledge, or on information acquired by me through the performance of my official duties. All records attached to this declaration are true and accurate copies of BOP records maintained in the ordinary course of business.

3. I have reviewed the complaint filed by Petitioner, in which he alleges his prerelease placement date should be calculated based on both earned and projected First Step Act earned time credits (FTCs), and the relevant BOP records.

1

4.  Petitioner inmate Alberto Nunez, Register number 57628-039, is an inmate currently incarcerated at FCI Milan since January 14, 2025.[1] The United States District Court of the Eastern District of Michigan sentenced Petitioner to a 151-month term of imprisonment followed by 3 years of supervised release for violations of 21 U.S.C. §841(a)(1) Possession with Intent to Distribute Cocaine.[2]

5.  The First Step Act (FSA), P.L. 115-391, enacted into law on December 21, 2018, addresses reentry of the incarcerated by directing the BOP to take specific actions regarding programming and programming incentives and compassionate release, among other issues. To encourage inmates to participate, Congress also created a system of time credits and other incentives.[3] Eligible inmates, as in those whose convictions do not preclude them from receiving FSA benefits[4], may earn FSA time credits (FTCs).

6.  FTCs are earned through "ongoing participation in programs designed to reduce the risk of recidivating," and are "auto-calculated based on 30-day increments in earning status."[5] An inmate may lose earned FTCs for violating the requirements of an EBRR program, or as a sanction imposed by a Disciplinary Hearing Officer for the commission of a prohibited act. Additionally, inmates who refuse programming, or have programming interrupted by placement in restrictive housing, outside medical trips, or other means, are not "successfully participating" during those periods of interruption and will not earn credits for those dates.[6] Therefore, credits are only earned by actual completion or

---

[1] See Attachment 1, Inmate History – Quarters.
[2] See Attachment 2, Public Information Inmate Data.
[3] 18 U.S.C. § 3632(d)(1)-(4), BOP Program Statement 54010.01, and 28 C.F.R. §§ 523.40-44.
[4] 18 U.S.C. § 3632(d)(4)(D) enumerates the convictions which render an inmate ineligible for FSA programming incentives. Inmates subject to a final order of deportation are similarly rendered ineligible for FSA programming incentives. 18 U.S.C. § 3632(d)(4)(E).
[5] BOP Program Statement 54010.01, CN-2 at 11.
[6] BOP Program Statement 54010.01 at 11-12; 28 C.F.R. § 523.43(a).

participation in anti-recidivism programming, not the speculative participation in future programming.

7. Regarding the use of FTCs, a maximum of 365 days of credits may be applied towards an inmate's early transfer to supervised release – functionally shortening their sentence by up to one year.[7] Eligible inmates may have any remaining credits applied towards early transfer to prerelease custody, either in a Residential Reentry Center (RRC or halfway house), or home confinement.[8]

8. However, *earning* FTCs is not synonymous with *applying* FTCs. To be considered for the application of FTCs, an eligible inmate must 1) have earned FTCs in an amount equal to the remainder of the inmate's term of imprisonment, 2) shown through periodic risk assessments, a demonstrated reduction in recidivism risk or maintained a low/minimum risk during his incarceration, and 3) had the remainder of his term computed under applicable law.[9] Only upon meeting the requirements of 18 U.S.C. § 3624(g)(1) and § 523.44(b)-(d), will an inmate's earned FTCs be applied toward his sentence computation.

9. While FTCs cannot be applied until they are actually earned, projected FTCs are considered and taken into account for pre-release planning purposes. For instance, the Bureau "will initially estimate an FSA conditional Projected Release Date (PRD) by calculating the maximum number of potential FTC that an inmate will earn during his or her sentence."[10] However, this "FSA PRD is subject to change during the inmate's incarceration, and will be adjusted if the inmate's PATTERN score changes or if the

---

[7] See 18 U.S.C. § 3624(g)(3); 28 C.F.R. § 523.44(d).
[8] See 28 C.F.R. § 523.44(c).
[9] See 18 U.S.C. § 3624(g)(1); 28 C.F.R. § 523.44(b)-(d).
[10] BOP Program Statement 54010.01 at 16.

3

inmate enters non-earning status."[11] Additionally, referrals for prerelease custody will be made either 12 months before an inmate's projected release date, or 60 days prior to the inmate's projected RRC placement date, whichever is greater.[12] In doing so, the Bureau "will assume that the inmate will remain in earning status from the referral date until the transfer to prerelease custody."[13] But again, "FTC[s] will not be applied towards an inmate's release date unless earned."[14] Bureau policy is consistent with the FSA, which states "[t]ime credits *earned* under this paragraph. . . shall be applied toward time in prerelease custody or supervised release."[15] The conditional PRD and RRC referrals do not indicate the inmate has already earned those FTCs or has satisfied the statutory requirements for immediate application.

10. The FSA Time Credit Assessment includes a Conditional Pre-release Planning and Preparation section, that serves as a planning tool, to be used to help prepare inmates for placement in the community. These PRD and Conditional PRD dates are not guaranteed and are subject to change based on behavior, program participation, eligibility, appropriateness, and community resources.

11. Petitioner's FTCs have been applied pursuant to policy. As of August 28, 2025, Petitioner has earned 365 days of FTC toward early release and 330 days that have been applied towards his community placement eligibility.[16] His full term expires on June 4, 2032; however, applying Petitioner's earned and projected Good Conduct Time (GCT) credits, an additional 365 days for his §3621 Residential Drug Treatment Program completion, as

---

[11] Id.
[12] Id.
[13] Id.
[14] Id.
[15] See 18 U.S.C. § 3632(d)(4)(C).
[16] See Attachment 3, FSA Time Credit Assessment

4

well as the 365 days of earned FTCs towards early release, results in a projected release date of October 29, 2028, via FSA/3621 Release.[17]

## EXHAUSTION

12. The Administrative Remedy Program is described at 28 C.F.R. § 542.10, et seq., Administrative Remedy Procedures for Inmates. Ordinarily, once an inmate has attempted to informally resolve an issue, the administrative remedy process is commenced by filing a Request for Administrative Remedy (BP-9) with the Warden of the facility where the inmate is confined. If the inmate is not satisfied with the BP-9 response, the inmate may appeal by filing a Regional Administrative Remedy Appeal (BP-10) with the Regional Office within 20 days of when the warden signed the response. If dissatisfied with the Regional response, the inmate may appeal to the BOP's Office of General Counsel via a Central Office Administrative Remedy Appeal (BP-11) within 30 days of the Regional Director's signed response. Appeal to BOP's Office of General Counsel is the final step in the BOP's administrative remedy process. The response from the General Counsel's Office is considered the final agency decision. To properly exhaust all administrative remedies, an inmate must timely and properly present a claim to each level, have that remedy request accepted, and receive an actual response to that request.

13. BOP policy provides that the inmate is to obtain the appropriate form from institution staff (ordinarily, the correctional counselor). It further notes, the "Request for Administrative Remedy, Form BP-9 (BP-229), is appropriate for filing at the institution." If the inmate submits a request for remedy but does not receive a response within the time allotted for

---

[17] See Attachment 2.

5

reply, including extension, the inmate may consider the absence of a response to be a denial at that level.

14. Remedy requests are assigned a unique numeric designation, followed by a suffix indicating the level of the request, as follows: "-F" indicates a request to the Warden, "-R" indicates an appeal to the Regional Director, and "-A" indicates an appeal to the General Counsel's Office. The federal regulation on the Administrative Remedy Program states that all submissions received by the Administrative Remedy Clerk, whether accepted or rejected, shall be entered into SENTRY in accordance with the SENTRY Administrative Remedy Technical Reference Manual.

15. Petitioner has only submitted only a single remedy at the institution level.[18]

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge and belief.

Executed on this __10__ day of September 2025.

_____
M. Burnett
Case Management Coordinator
FCI Milan

---

[18] See Attachment 4, Administrative Remedy Retrieval; and Attachment 5, Remedy 1247667-F1.

6